### CITY OF DURANT v. STORY et al.

No. 15860—Opinion Filed Sept. 29, 1925.

1. **Municipal Corporations—Failure of Paving Project Through Protest—Liability of City to Printer for Cost of Publication Notices.**

Where a city, acting under the statute, commences proceedings to pave certain streets, and has published the necessary notices, ordinances, letting of contracts for paving, and before the paving is done the citizens of said town protest down the paving of such street, and the city council is thereby prevented from doing the paving, the city is liable for publishing such notices and ordinances to the newspaper publishing same.

2. **Same.**

Where a city council is proceeding to pave certain streets under authority given it by statute, and after it has completed the preliminary work of giving the necessary notices and letting the contract and before the paving can be commenced, the city is enjoined by the district court from proceeding with the pavement of said street, the city is liable to the printer for his fees for publishing such notices.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Bryan County; Porter Newman, Judge.

Action by R. S. Story and G. W. Archibald against the City of Durant. Judgment for plaintiffs, and defendant brings error. Affirmed.

Stanley Williams and V. B. Hayes, for plaintiff in error.

Hatchett & Ferguson, for defendants in error.

Opinion by MAXEY, C. The parties will be referred to as they appeared in the court below. On the 13th day of February, 1923, the plaintiffs, R. S. Story and G. W. Archibald, a firm doing business as the Democratic Publishing Company, filed their petition in the district court of Bryan county against the city of Durant, claiming the sum of $2,967.80, with interest from January 6, 1923, for printing done by the plaintiffs for the city of Durant, as per verified statement. The majority of the items contained in the verified statement consist of publication notices relating to the paving of certain streets in the city of Durant, and some other items for stationery, election tickets, etc.

The defendant filed its answer, consisting of a general denial, and then sets up as a separate defense:

"The defendant further answering denies that it is liable for any of the items set forth in plaintiffs' itemized accounts; that said items were publications on various street improvement districts in the city of Durant, and that this defendant is not liable for any of said publications, but that the abutting property on the respective street improvement districts is by law liable therefor."

It appears by the petition of plaintiffs, filed in the district court February 13, 1923, that there were items consisting of primary election tickets and 1,600 election tickets, 500 post cards $5, and printing same $4.75, and resolutions and ordinance notices, the bidders' notice to contractors, etc., amounting in the aggregate to the sum of $1,445.20. The other items amounted in the aggregate to $1,524 for printing done under paving assessment ordinance, and defendant denies payment of all of them. The case was tried to the court, a jury having been waived by both parties, and resulted in a judgment for $1,998 85 in favor of plaintiffs. Motion for new trial was filed, overruled, and the case has been duly appealed to this court.

There are four assignments of error, which may all be considered together. The facts in the case seem to have been agreed on at the trial, as will appear from the following statement of counsel:

"The Court: You need not prove that; I know they are correct. The court will admit they are absolutely correct; all of those matters have been published by them. You needn't make that kind of proof. Mr. Hatchett: All right, I will assume that has been proven. In connection with the preceding questions the plaintiff desires to prove, and expects to prove, that before proceedings were instituted, either by the property owners or by the city council itself,

these various streets, to wit, Elm street, Evergreen street, Eighth avenue, Ninth avenue, Sixth avenue and Locust street, the resolutions required by law to be published as a preliminary matter to letting the contract and the making of assessments, were protested down in one or two instances as to certain of these streets, and therefore, under the law, when these preliminary resolutions were passed as required by law, it was the duty of the city council to pass and publish these items. The paving was protested down by the property owners. We further expect to show that as to Elm street, that inasmuch as we have charged here certain appraisements, one item being $236, one item being $308.75, and the notice to contractors, that the pavement on that street got into this situation; the preliminary resolutions were passed by the mayor and city council and published and notice to property owners filed and the city council went ahead and directed the paving proceedings; that notice to contractors be given, and that there are the publication fees for the notice to contractors, and that the contract was let to Mr. Baum, or the Baum Construction Company, and that then appraisers were appointed who made the appraisements and assessed the cost of paving against the abutting property owners, and that these items charged here was for the work, the law having required that the appraisers' report be published. Mr. Williams: Was that on Elm street? Mr. Hatchett: Yes, sir. We expect further to show that after the appraisers' reports were published, at the direction of the city authorities, that then certain property owners on said street enjoined in the district court of Bryan county the further progress of the work, and the district court rendered judgment finding that the whole paving proceedings were illegal and invalid and enjoined the whole proceeding. This, in brief, is the position of the plaintiffs. Later on Elm street was paved, but not all of it. My position of the law, and I think I can show you that I am absolutely correct, is that if the paving district goes through, all the costs of proceedings is charged against the abutting property owners, and is not a liability of the city. But where the city authorities go ahead and institute the preliminary proceedings leading up to the assessments, and before the assessment becomes fixed and a valid lien on this property, some irregularity develops and the proceedings are enjoined, or if the property owners protest it down, then there is no way to fix the charge against the property owners under the law, and it then becomes, under the law, as far as the cost of printing, advertising, etc., is concerned, a personal liability of the city. The Court: How does it become a personal liability of the city, if there was no estimate made to take care of such things? Mr. Williams: That is the point we are making, that we are not liable. Mr.

Hatchett: It is a part of the governmental function of the city. The law made it the duty of the city to authorize the publication of these advertisements, and there is no other way provided to take care of it except in this way. The Court: I think that is immaterial. Mr. Williams: Does the court hold that we can't go ahead and prove these facts? The Court: The court will hold that those are the facts; the court will admit that what you said are the facts. Mr. Hatchett: Then it will be admitted that the statement of facts as made by the attorney for the plaintiffs are the facts and is the evidence in this case. Mr. Williams: Yes, we agree. The Court: That is with reference to the Elm street paving. What are you going to do about the other items? Mr. Hatchett: Well, there is Evergreen and Eighth, they are all in the same situation. As to Evergreen street, the facts are these: That they started proceedings, the property owners did, to pave Evergreen and Eighth streets, also Sixteenth, and also Sixth and also Ninth, and also Eighth, and they published the preliminary resolutions. The Court: And gave notice to the property owners, and they protested it down? Mr. Hatchett: Yes, sir; the property owners. The property owners signed the petition, and after they got it up and got it ready, they decided it was too much. The Court: After the property owners moved the city council to do that? Mr. Hatchett: Yes, sir. The Court: Then they protested it down? Mr. Hatchett: Yes, sir. Witness: They came before the city council and asked them not to do it. The Court: Well, that is a protest. Mr. Hatchett: Then after the preliminary resolutions were passed, as required by law, the property owners protested down the pavement on those streets. These are the facts with reference to the paving items. As to these other items, ordinances, primary tickets, etc., it is admitted that they furnished the material and did the work. Mr. Williams: We agree to the facts as stated by counsel for plaintiff."

It will appear from the foregoing statement of counsel and the court, that all the facts are agreed to. It is the contention of plaintiff in error that the paving items, as shown by said itemized account, aggregating the sum of $1,324, and additional items which are shown to be paving items and not included in the statement, to wit: Appraisers' assessment, February 5th, $348; April 26th, $290: June 21st., $88, aggregating the sum of $626, should be stricken from the judgment; that the statute of limitations does not apply on the ground that these items are all paving publications, which paving was never completed, or started, but was stopped on account of protests, legal proceedings, etc., and the defendant contends that it is not liable for any of said items.

The defendant bases its contention on the ground that after the publication was made, the contracts let, and the work ready to start, the paving was protested down by the citizens of two or three of the paving districts, and in one district, an injunction obtained against proceeding with the pavement on the ground that the proceedings leading up to the assessment were illegal and void, and that there was no fund out of which said items could be paid. Section 4594, Comp. St. 1921, provides that the cost of paving and other improvements should be assessed against the property abutting upon the street improvement district and that the publication notices would be a part of the cost of the paving.

It appears that the particular question involved in this case has never been passed on directly by this court, but the question seems to have been passed on by the courts in other jurisdictions. Conway v. City of Chicago (Ill.) 86 N. E. 619, holds:

"The liability of a city to one who has constructed a public improvement to be paid for by a special assessment is limited to the amount of the special assessment actually collected for the improvement and not paid over to the contractor."

We have been cited to the case of MacKinzie v. City of Anadarko, 72 Okla. 90, 173 Pac. 483, but a reading of that case shows that it is not applicable to the facts in this case. The defendant in error calls attention to the fact that the statute of limitation was not pleaded in the answer of the defendant, and therefore cannot be considered by this court, nor was it considered by the court below, and we are cited to the following cases which appear to settle that rule: Reaves v. Turner, 20 Okla. 492, 94 Pac. 543; S. L. & S. F. Ry. Co. v. Bloom, 39 Okla. 78, 134 Pac. 432; Buchner v. Baker, 65 Okla. 130, 164 Pac. 659; Wray v. Howard, 79 Okla. 223, 192 Pac. 584; Morrisey v. Shriver, 88 Okla. 269, 214 Pac. 702.

It is the position of plaintiffs below that it was a mandatory duty on the part of the city authorities to publish these resolutions, assessments, etc., the same as it was their duty to publish an ordinance of any kind. Section 4590, Comp. St. 1921, provides as follows:

"Resolution for Improvements — Publication. When the mayor and council shall deem it necessary to grade, pave, macadamize, gutter, curb, drain, or otherwise improve any street, alley, or lane, or any part thereof within the limits of the city, they shall require the city engineer to prepare complete and accurate specifications and es-

timates and upon approval thereof by the mayor and council, he shall file the same with the city clerk, whereupon said mayor and city council shall, by resolution, declare such work or improvement necessary to be done. Said resolution shall be published in six consecutive issues of a daily newspaper, or two consecutive issues of a weekly newspaper, published and having circulation within such city."

It will thus be seen that on the passage of the resolutions for improvements, it became the legal duty of the mayor and council to publish the same as provided in said section. This was done and makes up a good portion of the paving items due plaintiffs.

Section 4597, Comp. St. 1921, provides, in substance, that after the expiration of the time for protest on the part of the property owners, or if no sufficient protest be filed, then the mayor and council shall adopt a resolution, which resolution, by the provisions of section 4598 of the Comp. St. 1921, shall set forth the terms and conditions of the contract for the paving of the street, require bond, etc., and section 4599, Comp. St. 1921, provides that said resolution shall direct the city clerk to advertise for bids for making the improvements, and the concluding part of said section is as follows:

"Said notice shall be published in ten consecutive issues of a daily newspaper or two consecutive issues of a weekly newspaper published and of general circulation in said city."

Other sections of the statute provide that if a contract be let, appraisers shall be appointed who shall make written reports and that notice of such hearing shall be published by the city clerk.

It appears that all of the items charged on the plaintiffs' account for paving publications were publications required to be made under and by virtue of the foregoing provisions of the statute; that they are mandatory provisions, and that it was the duty of the mayor and city council to publish the various notices, ordinances, and assessments, and these officials caused same to be published. It would seem that it would make the law a dead letter to require notices to be published and hold that the city was not liable for said publications.

In examining the cases similar to this, we find the following: In the case of District of Columbia v. Lyon, 40 L. Ed. 672, the city was held liable on indebtedness for street work on failure to levy a separate tax from lot owners.

In the case of Cole v. Shreveport (La.) 6 South. 690, the city was held liable on a paving contract, where the assessment was declared unconstitutional. In the case of Barber Asphalt Paving Co. v. City of Denver, 72 Fed. 336, 19 C. C. A. 139, the second paragraph of the syllabus is as follows:

"A municipal corporation which contracts to pay for street improvements by assessments upon abutting property is primarily liable to pay the contract price itself, if it has no power to make such assessments, or if it fails to make them, or if the assessments it attempts to make are void."

In the body of the opinion Mr. Justice Sanborn says:

"If a municipal corporation, which has the power to make a contract for street improvements, contracts for them and stipulates in the contract that the agreed price of the improvements shall be paid to the contractor out of funds to be realized by assessments upon abutting property, and the city has power to make the assessments, but fails to do so, or fails to make valid assessments, and thereby to provide the funds out of which the contractor may receive the price of his labor and materials, the city is primarily and absolutely liable to pay the contract price itself. In case of this character the city becomes primarily liable, even when the contract expressly provides that the contractor shall accept the assessments in payment of the contract price, and that the city shall be otherwise liable, whether the assessments are collectible or not. There is no substantial conflict of authorities upon these propositions, and the principle they establish is decisive of the question under consideration."

In the case of Bill v. City of Denver, 29 Fed. 344, the facts are almost identical with the facts and the law as here contended by the defendants in error. The opinion was written by Mr. Justice Brewer, and in the close of the opinion he states:

"It stands in the position of an implied guarantor contracting that it will do certain things in order to bring about the payment for those services. Failing to carry out its contract, it renders itself personally liable on the same principle that, when a private individual or a private corporation gives an obligation payable at a certain time in material or services, if, at the time named, it fails to so pay in the material or in the services, the right of the other party becomes then a mere money demand. Here the city contracted it would levy taxes in this district for the purpose of paying him for services. If it had made the levy, a different question might arise. But it did not. It did not perform its contract, and this becomes its personal obligation because it failed to

perform its contract. I have no doubt but that the city is liable."

It would seem from the foregoing authorities that the city is liable for these publication notices. The trial court weeded out several items and reduced the plaintiffs' claim for $2,967.80, to $1,998,85. We cannot say that the findings and judgment of the court are not supported by the evidence and the law of the case. We think the judgment is supported by the facts and the law of the case, and recommend that the judgment of the trial court be in all things affirmed.

By the Court: It is so ordered.