## STUCKEY, Co. Treas., v. KAYS.

No. 16885—Opinion Filed Sept. 21, 1926.

**1. Taxation—Special Assessment for Drainage—Nonliability of Restricted Indian Land—Recovery of Payment.**

An illegal special assessment tax assessed against restricted Indian allotments located in a drainage district, when paid under protest, may be recovered.

**2. Same—Exemption Inuring to Grantee.**

The allotments of restricted Indians, which are exempt from taxation by reason of Act of Congress, cannot be subjected to the payment of a special assessment tax for drainage purposes, incurred prior to the removal of the restrictions, in the hands of the allottee or his grantee.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Tulsa County; W. B. Williams, Judge.

Action by J. F. Kays against W. W. Stuckey, County Treasurer of Tulsa County. Judgment for plaintiff, and defendant brings error. Affirmed.

Byron Kirkpatrick, Co. Atty., and James Harrington, Asst. Co. Atty., for plaintiff in error.

Phillips J. Kramer and Richard Price Colley, for defendant in error.

Opinion by JONES, C. This action was instituted in the district court of Tulsa county by the defendant in error, as plaintiff, against the plaintiff in error, as defendant, to recover the sum of $351.65 as

taxes, which was a special assessment against real estate in a drainage district. The defendant, W. W. Stuckey, was county treasurer of Tulsa county, and as such received said sum as taxes in payment of said special assessment, which was paid under protest by the plaintiff, J. F. Kays, whose grantors were full-blood Creek Indians.

. The case was tried on an agreed statement of facts, wherein it was agreed that said lands at the time the special assessment was made were the allotments of certain full-blood Creek Indians, "and were not subject to taxes, while so owned and possessed by said allottees." The taxes paid cover special assessment for the years 1910 to 1920, inclusive, and the deed conveying said land to the plaintiff from the allottees was executed and delivered in May, 1920, the restrictions against alienation having been removed by Act of Congress at about that time.

Upon the agreed statement of facts the matter was submitted to the district court, and judgment rendered in favor of the plaintiff, and against the defendant for the amount sued for, from which judgment the appellant prosecutes this appeal, and contends that the appellee cannot avail himself of the restrictions upon the land prior to the date on which it was alienated; that said restrictions are personal to the allottees, and also makes the contention that special assessments for drainage purposes are not such a tax as the allotments of Indian citizens of the Five Civilized Tribes are exempt from.

Appellant calls attention to section 2990, R. L. 1910, being section 6067, C. S. 1921, providing for the payment of special assessments against nontaxable lands, and contends that this statute is applicable to the facts here involved; and that since the land has become alienable and no longer restricted, it is now subject to the tax, but we cannot concur in this contention. The lands here involved, like all other lands of the members of the Five Civilized Tribes, were selected under treaty agreement between the tribes and the United States Government and Acts of Congress, passed substantially in conformity to the agreements made, and the lands of full-bloods were not only exempted from taxation for a period of years, but were inalienable. If these lands were taxable for any purpose, then, under the laws of this state, same would be impressed with a lien to secure the payment of the tax, and if impressed with a lien, that would necessarily carry with it the power and authority of a sale for taxes; hence, to hold that the

laws of the state are applicable to restricted Indian lands, would not only be in contravention of the tax exemption clause of the Act of Congress, but would nullify the provision declaring such lands to be inalienable for a certain period of years. And we think, unquestionably, that a tax for drainage purposes comes within the meaning of the Act of Congress, and to hold that the land might be subjected to the payment of such a tax subsequent to the removal of restrictions, in the hands of the purchaser, would necessarily detract from the sale value of the land, and indirectly produce the same result as though exacted from the allottee. Under the provision of the Act of Congress, June 16, 1906 (Enabling Act), we were authorized to adopt a state Constitution, and to be admitted into the Union as a state, which act "provided that nothing contained in the said Constitution shall be construed to limit or impair the rights of persons or property pertaining to the Indians of said territories," etc.

This proviso was specifically accepted by the terms of the Constitution, and to follow the theory of the appellant in this case would be to circumvent and avoid the language of the Enabling Act, and of the Constitution, and the Act of Congress pertaining to restricted Indian lands.

A rather exhaustive discussion will be found of a kindred matter in 143 Fed. 287, in the case of United States v. Thurston County, Neb., et al., wherein it was said:

"Power to tax is the power to destroy."

And to hold that restricted lands of allottees might be subjected to the payment of any character of tax incurred prior to the removal of restrictions, would be destructive of the interest and rights sought to be protected by the government in dealing with the Indian citizen. The judgment of the trial court should be and the same is hereby affirmed.

By the Court: It is so ordered.

Note.—See under (1) 37 Cyc. p. 1184; 40 Cyc. p. 825 (Anno). (2) 40 Cyc. p. 824.