## POWELL v. CITY OF ADA, OKL.
### No. 609.

Circuit Court of Appeals, Tenth Circuit.

Sept. 26, 1932.

Rehearing Denied Oct. 26, 1932.

W. R. Withington, of Oklahoma City, Okl. (L. P. Oldham, of Oklahoma City, Okl., on the brief), for appellant.

Thomas P. Holt, of Ada, Okl., for appellee.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

. McDERMOTT, Circuit Judge.

The appellant is the owner of street improvement bonds issued by the appellee in 1918. A part of the cost of the improvement ($5,609.58) was assessed against the abutting property of one Daniel Hayes, a restricted Indian. He declined to pay the assessments. On July 30, 1928, appellant made a demand upon the officials of the city that they re-assess the cost of the improvement against the legally assessable property of the improvement district. The officials did not immediately comply with such demand, and this action was brought shortly thereafter. The amended petition alleges that it was the duty of the city to make sufficient valid assessments to pay off the bonds, but that the city negligently, carelessly and wilfully failed and refused so to do; and that the pretended assessments against the Hayes property are invalid. The prayer is for a money judgment in the sum of $5,609.58. The answer denies the neglect, and affirmatively alleges that the Hayes assessments are valid; it further alleges that if the Hayes assessments are invalid, appellant was charged with notice of their invalidity. It further appears that on February 19, 1929, prior to the trial hereof, the officials proceeded to re-assess the assessable properties of the district; that other property owners of the district enjoined the re-assessment in the state court in an action to which appellant was not a party, and that such injunction proceeding is now pending on appeal to the Supreme Court of Oklahoma.

The trial court found, upon an agreed statement of facts supplemented by statements made in open court, that appellee did not refuse to order a re-assessment, but that the order was delayed as governmental bodies usually delay such matters. We are not advised of the extent of the delay, for the date of the filing of the case is not disclosed by the record; from the filing date of the amended petition, we know the delay was something less than four months. The court ordered that the cause be dismissed without prejudice. This appeal is from that order.

The bonds were issued, and the improvement made, under a statute enacted in 1907–1908 (C. O. S. 1921, § 4583 et seq.) by which the Mayor and Council were empowered to improve streets subject to the limitations of the statute; the cost is chargeable to abutting property, and the city officials are granted all necessary powers to require abutting property to pay. Assessments, based on appraised benefits, are levied by ordinance and made a prior lien on the properties benefited. The officials are authorized to issue negotiable coupon bonds for the amount of assessments not paid, "which bonds shall in no event become a liability of the city issuing the same." Section 4619 provides:

"Provided, that in the event that any special assessment shall be found to be invalid or insufficient in whole or in part, for any reason whatsoever, the city council may, at any time, in the manner provided for levying an original assessment, proceed to cause a new assessment to be made and levied, which shall have like force and effect as an original assessment." C. O. S. 1921, § 4619.

The bonds acknowledge that the city is indebted to the bearer in the principal sum, and that they are "payable solely from assessments which have been levied upon" the property benefited. They recite that all acts necessary to make them valid obligations have been performed, and covenant:

"That all acts, conditions and things necessary to be done to secure the prompt payment of this bond and interest will be done and the faith, credit, revenue and property of said city are hereby irrevocably pledged for the purpose of carrying out each and every stipulation contained herein."

Two questions are presented: First, are the assessments against the Hayes property valid? Second, if not, is the city liable to make up the deficit occasioned thereby?

Daniel Hayes is enrolled as a half-blood Chickasaw, and the property involved is his homestead. In 1916, he platted the homestead as College Addition, and dedicated the streets and alleys to the public, the dedication being approved by the Secretary of the Interior. The addition was annexed to the city, upon his request, in 1917. The improvement greatly enhanced the value of his property; he has erected a number of houses thereon which he rents. On March 15, 1916, the Secretary of the Interior removed the restrictions from the land, conditioned as follows:

"Such removal of restrictions to become effective only and simultaneously with the execution of deed by said allottee to the purchaser after said land has been sold in compliance with the directions of the Secretary of the Interior."

■ The property involved has not been sold or deeded, and the restrictions are therefore not removed. Section 1 of the Act of May 27, 1908 (35 Stat. 312) provides that the homesteads of Chickasaw allottees, enrolled as having half or more Indian blood, shall not be subject to alienation, contract to sell, power of attorney, or any other encumbrance prior to April 26, 1931, except that the Secretary of the Interior may remove such restrictions, in whole or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds as he may prescribe. Section 4 subjects to taxation only land from which restrictions have been or shall be removed. This restricted land can neither be encumbered nor taxed; the question, mooted of whether the assessment is an encumbrance or a tax is not therefore presented. It has been uniformly held, as far as we are advised, that restricted land is not subject to special assessments for improvements. United States v. Southern Surety Co. (D. C. Okl.) 9 F.(2d) 664; Stuckey v. Kays, 119 Okl. 227, 249 P. 416; Grotkop v. Stuckey, 140 Okl. 178, 282 P. 611; Garvin County v. Dennis, 140 Okl. 204, 282 P. 457.

■ It is claimed that the restrictions are removed, or that Hayes is estopped to assert that they are not, by his acts of platting the property, by petitioning for its annexation to the city, by consenting to the improvement, and by accepting the benefits thereof. It must be conceded that there are strong reasons why Hayes ought to pay for the benefits

he has received. But restrictions are imposed as a part of a broad governmental policy in its dealings with the Indians; and that policy would be set at naught if an Indian could remove restrictions on his property by his own acts. "The authority of the United States to enforce the restraint lawfully created cannot be impaired by any action without its consent." Bowling & Miami Improvement Co. v. United States, 233 U. S. 528, 534, 34 S. Ct. 659, 660, 58 L. Ed. 1080; United States v. Candelaria, 271 U. S. 432, 444, 46 S. Ct. 561, 70 L. Ed. 1023. A dedication of streets and alleys, approved by the Secretary, does not remove restrictions as to the rest of the property platted. We conclude that the assessments against the Hayes property are invalid.

■ The general question of the liability of a city for delinquencies of its officials in connection with special improvement bonds is fraught with difficulty and clouded by a maze of conflicting decisions. This record presents but one phase of the general question. The trial court found, upon statements made in open court, that the city did not refuse to re-assess, and that the delay involved was not unreasonable. Error is not assigned as to such findings. The errors assigned are that the trial court did not hold that there was a general liability upon the city where it "failed to levy a sufficient number of valid assessments to pay off said paving bonds" and that it did not hold that the city was liable "for negligence in failing to re-assess said paving district," the negligence complained of growing out of a dispute as to the validity in law of the Hayes assessment. It is not contended that the right to re-assess has been lost. The state district court has enjoined the re-assessment attempted, but the record does not disclose the grounds therefor; but whatever the grounds, the appellant, not being a party to that suit, is not bound by its decree, Fetzer v. Johnson (C. C. A.) 15 F.(2d) 145, certiorari denied 273 U. S. 751, 47 S. Ct. 455, 71 L. Ed. 873; furthermore, that decree is not final.

The question presented, then, is this: When it is not contended that the right to re-assess has been lost; when there is no refusal to re-assess, but when there is a short delay, contributed to by an uncertainty as to the law—is the city generally liable?

■ The statutes of Oklahoma give to the purchaser of these bonds a lien on specific property, but no right to proceed in his own name to enforce the lien. From a practical standpoint, therefore, the substantial thing

he receives is the statutory duty of the city officials to exercise their power to compel the property owners to pay for the improvements, and the agreement in the bond to the same effect. All courts, including the Oklahoma Supreme Court, agree that the one whose money has paved the street has a right of action if the city officials do not proceed as the statute commands, and as is agreed in the bond. The conflict arises over the question of what right of action he has, that is, whether the proper action is mandamus against the officials, or whether he may sue the city for their neglect.

■ The decisions upon the general question are gathered in Dillon on Municipal Corporations (5th Ed.) vol. II, pp. 1250 et seq., and in an elaborate note in 38 A. L. R. 1271. No attempt will be made to review them here, since decisions from other jurisdictions depend upon questions of statutory power, the contracts there involved, and other circumstances not pertinent here. In examining the decisions of the United States courts and of the Supreme Court of Oklahoma, it should be remembered that it is the state of the law at the time the bonds are issued, and not when they are due, that controls. Board of Education v. James (C. C. A. 10) 49 F.(2d) 91. First, as to the decisions of the United States courts.

In New Orleans v. Warner (1899) 175 U. S. 121, 20 S. Ct. 44, 48, 44 L. Ed. 96, drainage obligations were payable from a special fund, and the city officials were charged with certain duties connected with creating the fund. The city officials not only abandoned all effort to create the fund, but took active steps to prevent its creation. The general rule was laid down as follows:

"As the city had paid for the property in warrants drawn upon a particular fund, it was under an implied obligation to do whatever was reasonable and fair to make that fund good. Certainly it could not so act as to prevent the fund being made good, and then require the vendor to look to the fund, and not to itself."

In District of Columbia v. Lyon (1896) 161 U. S. 200, 16 S. Ct. 450, 40 L. Ed. 670, the power of the city to make assessments was cut off through the neglect of city officials in making assessments. A judgment against the city was affirmed. In Peake v. New Orleans (1891) 139 U. S. 342, 11 S. Ct. 541, 545, 35 L. Ed. 131, it did not appear that the right to assess had been lost; city officials had been directed by the Legislature to create a fund to discharge an obligation not incurred by the city; the Supreme Court said, arguendo:

"The contractor is specially interested in the full and prompt discharge of its duty by this administrative board. The remedy of mandamus is open to him to compel its action. On what principle of right and justice can he ignore this remedy, and charge the municipality, and burden all the taxpayers of the city?"[1]

The Eighth Circuit Court of Appeals has dealt with the general question in several well considered opinions. In Bill v. Denver (C. C. 1886) 29 F. 344, the city had the power to contract directly for the services of an inspector of sewers. It contracted, however, that the services should be paid from assessments. It appeared that the sewer district was not legally constituted, and no effort was made to make or collect assessments. The city was held for the services rendered.[2] In Barber Asphalt Paving Co. v. Denver (C. C. A. 1896) 72 F. 336, the city agreed to pay $38,094.05 for certain pavement; of this sum, $4,169.16 was to be paid by a street railway company which had contracted with the city to pave a part of the street. The city refused to compel the street railway company to comply with its contract. The court held that if a city, with power to contract for street improvements, does contract for them and stipulates that the cost shall be paid from assessments, the city is liable if it has no power to make such assessments, or if the assessments it attempts to make are void or invalid. In Bates County, Mo., v. Wills (C. C. A. 1917) 239 F. 785, 790, the general rule was laid down that:

"If a municipal or quasi municipal corporation which has the power to make a contract for internal improvements, contracts for them and stipulates that the agreed price of the improvements shall be paid to the contractor out of funds to be realized out of special assessments, or, out of the proceeds of

---

[1] Moore v. City of Nampa, 276 U. S. 536, 48 S. Ct. 340, 72 L. Ed. 688, strongly relied upon by appellee, is not in point. The statute prohibited a contract in excess of the engineer's estimate. Despite this, bonds were issued in excess of the estimate, and the transcript so disclosed. The Court of Appeals (18 F.(2d) 860) held the city was not liable; certiorari was granted (275 U. S. 515, 48 S. Ct. 33, 72 L. Ed. 401) because of a claimed conflict with the Eighth Circuit decisions next noticed. The judgment was affirmed, and the court said there was no conflict in the decisions as claimed.

[2] To the same effect, where the underlying statute was invalid, see Barber Asphalt Paving Co. v. Harrisburg (C. C. A. 3) 64 F. 283, 29 L. R. A. 401, certiorari denied 163 U. S. 677, 16 S. Ct. 1198, 41 L. Ed. 309; Hitchcock v. Galveston, 96 U. S. 341, 24 L. Ed. 659.

bonds it has the power to issue, and the corporation has power to make the assessments or to issue the necessary bonds but fails to make sufficient valid assessments, or to issue sufficient bonds to provide the necessary funds to pay the contractor the contract price of his material and labor, or if it misappropriates such funds to other purposes, the corporation becomes primarily liable to pay the contract price itself."

In Oklahoma City v. Orthwein (C. C. A. 1919) 258 F. 190, bonds were issued under the Oklahoma statute here involved. Part of the assessments were levied against a railway company. The court held this assessment was valid, relying on Oklahoma Railway Co. v. Severns Paving Company, 67 Okl. 206, 170 P. 216, 10 A. L. R. 157. This valid right to assess had been lost by virtue of an injunction issued by a trial court, which the city had suffered to go by default. The Court of Appeals found the city officials guilty of negligence and of a wilful refusal to make valid assessments, and held the city liable therefor. The right to assess was treated on all hands as having been lost.[3]

In these cases, the rule is stated as applying to cities which have the power to contract for such improvements. The Oklahoma Supreme Court held, prior to the issuance of these bonds, that cities in Oklahoma have no such power. Enid v. Warner-Quinlan Asphalt Co., 62 Okl. 139, 161 P. 1092, 1094. Whether that distinction, so much labored, is sound, need not be decided.[4] In Bill v. Denver, the right to assess never existed; in the Orthwein Case, it was treated as having been lost by the failure of the city officials to defend a suit challenging a valid assessment. In none of the cases was the question raised of the obligation of the bondholder first to attempt to enforce his lien by mandamus before attempting to impose a liability upon the entire city.

That question was presented to the Circuit Court of Appeals for the Seventh Circuit in City of Pontiac v. Talbot Pav. Co., 94 F. 65, 69, 48 L. R. A. 326. There one assessment was held invalid (Bradford v. Pontiac, 165 Ill. 612, 46 N. E. 794); the bondholder petitioned for a re-assessment; the city officials failed to comply. Thereupon the city was sued. Recovery was denied; the court noted the conflict in the authorities, and stated:

"However the consensus or weight of authority shall ultimately determine the remedy of the contractor for local improvements, where the statute authorizes payment by special assessment, but is merely directory in its terms to that end, or where the collection is limited by ordinance or contract to such assessments, and the authorities fail to provide for or to carry out the assessment, we are clearly of opinion that no general doctrine of municipal liability for mere nonfeasance in the failure or neglect of council or officers to perform a duty of the municipality can be extended to override per se the inhibitions expressed in this statute, and that the contractor must proceed by mandamus to enforce his claim."

Turning now to the Oklahoma decisions. In Turner v. Guthrie (1903) 13 Okl. 26, 73 P. 283, the court said that the clear weight of authority supported the rule that the remedy of one whose claim is payable from assessments was in mandamus, and not in an action for damages. In Enid v. Warner-Quinlan Asphalt Co., supra, decided in 1916, the city was sued because of a void assessment against property of the United States used for its post office. The statute there involved (chapter 8, Session Laws 1901) is similar to the present statute. The court held that, irrespective of contract stipulation, "Recovery cannot be had against a municipality in this state on a contract for paving because some part of the abutting property against which proper assessments have been levied cannot be collected by reason of the fact that it belongs to the United States." To the same effect, where assessments were held void in so far as they exceeded the engineer's estimate, is Reed v. Bartlesville (1923) 108 Okl. 62, 234 P. 642. In Durant v. Storey (1925) 112 Okl. 110, 240 P. 84, a publisher sued for printing notices of a proposed improvement which was defeated by a protest. The city was held, the court citing some of the Eighth Circuit cases above discussed. The case is distinguishable because the statute required the publication of notices prior to the creation of the district.

---

[3] To the same effect, where the city officials permitted the right to assess to become barred by the statute of limitations, see Denny v. Spokane (C. C. A. 9) 79 F. 719. This opinion relied strongly on McEwan v. Spokane, 16 Wash. 212, 47 P. 433, overruled thereafter by German-American Sav. Bank v. Spokane, 17 Wash. 315, 49 P. 542, 38 L. R. A. 259. See, also, Addyston Pipe & Steel Co. v. Corry, 197 Pa. 41, 46 A. 1035, 80 Am. St. Rep. 812.

[4] Judge Dillon speaks of this distinction as follows:
"The fact that the city had power to contract to pay from its general funds does not enlarge the rights of the contractor. If the improvement is one which might properly be made at the expense of the property benefited, the decision of the city that it should be so paid is final, and controls the court in determining the rights and liabilities of the parties." Dillon on Munic. Corp. (5th Ed.) vol. II, p. 1258.

In Mackenzie v. Anadarko (1918) 72 Okl. 90, 178 P. 483, the city was held not liable where the officials, without warrant of law, cut the interest rate and remitted penalties, the court holding that a special improvement bond could not thus be converted into one of general obligation. In Severns Pav. Co. v. Oklahoma City (Okl. Sup. 1932) 13 P.(2d) 94, 97, the court held that the remedy of the bondholder was in mandamus only, where the city officials were negligent; the court however expressly stated that it was not considering the situation "which relates to a loss of the right to assess and causes a real loss of the previously existing right to assess, and results from negligence, and the bondholder has in no way contributed to the result." The court recognized that a bondholder has a right of action where city officials do not perform the obligations imposed on them by the statute and the bond, the court saying:

"As to property liable to assessment, there is a clear intent that it shall be paid by assessment only, and the statutes are carefully drawn to prevent loss of the right, by providing that property not properly assessed may be reassessed at any time, so that in the case of neglect, delay, or refusal mandamus will always lie to force collection of the assessments in the manner provided by law, except where an injunction is obtained under circumstances where the bondholder has no notice and no opportunity to protect himself."

In German-American Sav. Bank v. Spokane, 17 Wash. 315, 49 P. 542, 38 L. R. A. 259, the court held, contrary to an earlier decision, that a suit against the city could not be maintained while there was a right to enforce the claim against the benefited property. Reilly v. Albany, 112 N. Y. 30, 19 N. E. 508, one of the leading cases supporting the rule contended for by appellant, has been modified by Ready v. Syracuse, 144 N. Y. 63, 38 N. E. 1006, and Weston v. Syracuse, 158 N. Y. 274, 53 N. E. 12, 43 L. R. A. 678, 70 Am. St. Rep. 472, which hold that if the fault complained of is lack of diligence on the part of the city officials, the bondholder may and should proceed by mandamus; but where the city has taken such action as to render assessments void or uncollectible, then the city generally must respond. To the same effect, see Whalen v. La Crosse, 16 Wis. 271; Fletcher v. Oshkosh, 18 Wis. 228; Alton v. Foster, 207 Ill. 150, 69 N. E. 783; Farrell v. Chicago, 198 Ill. 558, 65 N. E. 103; Chicago v. Thomasson, 259 Ill. 322, 102 N. E. 748; Greencastle v. Allen, 43 Ind. 347; cf. Blain v. Delphi,

195 Ind. 463, 145 N. E. 764; Union Trust Co. v. State, 154 Cal. 716, 99 P. 183, 24 L. R. A. (N. S.) 1111; Citizens' Bank v. Spencer, 126 Iowa, 101, 101 N. W. 643. In Hancock v. Mt. Sterling, 170 Ky. 207, 185 S. W. 856, a part of the cost was assessed against the court house; that assessment was invalid, and there was no power to re-assess. The city was held liable.

Several courts, including the Supreme Court of the United States, have quoted with approval the personal view of Judge Dillon, expressed in the Fourth Edition of his work on Municipal Corporations, § 482, in these words: [5]

"For why should all be taxed for the failure of the council to do its duty in a case where the contractor has a plain remedy, by mandamus, to compel the council to make the necessary assessment and proceed in the collection thereof with the requisite diligence?"

In the case at bar, there is no contention that the right to re-assess the cost of the improvement against the abutting property subject to assessment has been lost. The appellant, by his demand on the city, asserts that the right exists. The city, by its tardy compliance, agrees. It is our conclusion, under these facts, that appellant cannot now maintain an action for damages against the city. Where the statute confers the power to re-assess, where there is no claim that that power has been lost, a holder of special improvement bonds should first proceed to compel the city officials to do their duty. The appellant's lien extends only to property in the improvement district; he does not have a lien on all the property in the city. The rule contended for by appellant would enable city officials, by mere neglect or a simple refusal to proceed, to convert a special improvement bond into a general obligation of the city, and to compel property owners who have paid for paving abutting their property, to pay also for that abutting the property of others.

The order dismissing the cause without prejudice to future action is

Affirmed.

[5] Peake v. New Orleans, 139 U. S. 342, 353, 11 S. Ct. 541, 35 L. Ed. 131; Union Trust Co. v. State, 154 Cal. 716, 99 P. 183, 24 L. R. A. (N. S.) 1111. This language is apparently not carried over into the Fifth Edition (1911). In the last edition the author, after reviewing the conflicting authorities, concludes that mandamus is a proper remedy but not always the exclusive one; that where assessments are invalid and there is no power to re-assess, or where there is an absolute lack of power to charge the cost to abutting owners, the city should be held.