[Sac. No. 1570. In Bank.—December 21, 1908.]

UNION TRUST COMPANY OF SAN FRANCISCO (a Corporation), Appellant, v. STATE OF CALIFORNIA, Respondent.

MONTGOMERY AVENUE BONDS—NO CONTRACTUAL LIABILITY ON PART OF STATE.—Neither the terms of the act of April 1, 1872, (Stats. 1871, p. 911), entitled "An act to open and establish a public street in the city and county of San Francisco to be called Montgomery Avenue, and to take private lands therefor," nor any of the bonds purporting to have been issued thereunder, assuming their validity, created any contractual liability on the part of the state of California to the holders of such bonds.

ID.—FAILURE OF OFFICIALS TO FOLLOW AUTHORIZED METHOD TO RAISE ASSESSMENTS.—The state of California, by its legislative act authorizing the issue of such bonds and providing that funds should be raised in a certain manner for their payment, did not enter into a contract with the holders of the bonds that the method prescribed for raising such funds would be followed, and it is not liable for

the damages occasioned to the holders by the failure of the proper officers, for any cause, to levy and collect the necessary assessments.

ID.—CONSTRUCTION OF ACT—METHOD OF PAYMENT OF BONDS.—By the express terms of the act of April 1, 1872, the legislature never contemplated that payment of the bonds was to be made in any manner other than by assessments on the property benefited. Section 24 of the act expressly exempted the city from liability. That no similar provision specifically exempting the state was inserted merely indicates that the creation of liability on the part of the state was not within the scope of the legislative consideration.

ID.—AGENTS OF STATE IN DOING WORK.—Conceding that the board of public works and the other officers mentioned in the act became the agents of the state, it does not follow that the state authorized them to bind it to pay the cost of the work or made the state liable for their failure to raise, in the manner provided by the statute, the funds necessary for the payment of the bonds.

ID.—AGENTS DISCHARGING GOVERNMENTAL FUNCTIONS.—No liability for the failure of the proper officers to levy and collect the assessments necessary to discharge the bonds can be imposed upon the state if those officers, while agents of the state, were merely agents charged with governmental functions. There is no liability if the state, in authorizing the doing of the things contemplated by this statute, was acting in its sovereign capacity. That it was so acting is shown by the terms of the act itself.

ID.—OPENING OF STREETS PERFORMANCE OF GOVERNMENTAL POWERS.— The opening of streets and the condemnation of the necessary lands, together with provision for payment of the costs and expenses, are among the most familiar governmental powers, and officers charged with duties in connection with such undertakings are exercising, on behalf of the state, governmental functions.

APPEAL from a judgment of the Superior Court of Sacramento County.   J. W. Hughes, Judge.

The facts are stated in the opinion of the court.

S. W. Holladay, and E. B. Holladay, for Appellant.

U. S. Webb, Attorney-General, and George A. Sturtevant, Assistant Attorney-General, for Respondent.

SLOSS, J.—This action was brought to recover from the state of California the sum of eight hundred and fifty-five thousand dollars claimed to be due as the principal of 855 bonds, and a further sum of $1,121,010 for accrued interest. The defendant's demurrer to the complaint was sustained, and

the case now comes up on plaintiff's appeal from the ensuing judgment in favor of defendant.

The bonds in question are of the class known as "Montgomery Avenue Bonds." They were issued under the terms of an act of the legislature entitled "An act to open and establish a public street in the city and county of San Francisco to be called Montgomery Avenue, and to take private lands therefor," approved April 1, 1872. (Stats. 1871-2, p. 911.) The act provides for the taking and dedication of a strip of land in the city and county of San Francisco for an open and public street to be known as Montgomery Avenue. The strip described is one running diagonally through a number of the then existing streets of the city and the intervening blocks. It is provided that the value of the land taken for the avenue and the damages to the improvements thereon or adjacent thereto and injured thereby, and all other expenses incidental to the taking and the opening of the avenue shall be considered to be the cost of opening the avenue and shall be assessed upon certain described lands, declared by the act to be benefited by the proposed improvement. Section 5 provides that whenever the owners of a majority in frontage of the property described as benefited by the opening of the avenue shall petition the mayor for the opening of the avenue, a board of public works, as created by the act, to consist of the mayor, the tax-collector, and the surveyor of the city and county of San Francisco shall proceed to organize for the carrying out of the objects of the act. Said board of works, having adopted the requisite surveys, plans, maps, etc., shall proceed to ascertain and determine and set down in a written report the description and actual cash value of the several lots included in the lands taken for said avenue, and the amount of damage thereby occasioned to the property along the said line and within the course of said avenue. The board is also required to determine and separately state in the report a description of the several subdivisions of land included in the district declared to be benefited by the improvements and to set down opposite the description of each lot the amount in which, according to the judgment of the board, said lot has been or will be benefited by reason of the opening of said avenue. Provision is made for the inspection of such report by parties interested, and the board is authorized to apply to

the county court for confirmation of the report.  When, by the confirmation of such report, the damages, costs and expenses of opening said avenue have been fixed, the board is directed to "cause to be prepared and issued bonds in sums of not less than $1000 each for such an amount as shall be necessary to discharge and pay all damages, costs and expenses as aforesaid.  Said bonds shall be known and designated as the 'Montgomery Avenue Bonds'; shall be payable in thirty years from their date unless sooner redeemed as in this act provided, and shall bear interest at six per cent per annum payable at the office of the treasurer of said city and county." Persons to whom damages are awarded are authorized to take bonds in lieu of damages and bonds not so taken are to be sold by the mayor, auditor, and treasurer of the city and county to the highest bidders.  All money arising from the sale of the bonds is to be paid to the treasurer of the city and county to be kept in a fund known as the Montgomery Avenue fund. Section 11 of the act provides for the annual levy, assessment and collection of a tax upon the benefited lands sufficient to pay interest on the bonds as the same mature.  The moneys so collected are to be paid over to the treasurer as a part of the Montgomery Avenue fund and to be paid out by him on the coupons attached to the bonds as they from time to time become due.  The act further provides that there shall be levied, assessed, and collected annually, commencing with the year 1880, upon the same lands, a tax of one per cent upon each one hundred dollars valuation, which shall constitute a sinking fund for the redemption of said bonds.  These moneys when collected are also to be paid into the Montgomery Avenue fund, and are to be used for the redemption of the bonds whenever the treasurer shall have ten thousand dollars or more in said sinking fund.  Section 24 of the act reads as follows: "It is hereby expressly provided that the city and county of San Francisco shall not in any event whatever be liable for the payment of the bonds, nor any part thereof provided to be issued under this act, and any person purchasing said bonds, or otherwise becoming the owner of any bond or bonds, accepts the same upon that express stipulation and understanding."

The complaint before us alleges the performance of all of the acts necessary to authorize the issuance of the bonds in

question. It is averred that the actual owners of more than a majority in frontage of the property described in the act as benefited, did petition the mayor upon June 18, 1872, requesting and demanding the opening of said Montgomery Avenue. The board of works thereupon organized and did all of the acts and things required of them by the act. They made their report and presented it to the county court for confirmation, and the county court did on the eleventh day of November, 1872, make its order approving and confirming said report. The damages, costs, and expenses arising from or incidental to the opening of said avenue having been fixed, the board of works caused to be regularly prepared, executed, and issued 1579 Montgomery Avenue bonds in the sum of one thousand dollars each. Each of said bonds (except as to number) was in the following form:

"State of California.

"Board of Public Works

"(Number 13.)

"City and County of San Francisco.

"(Vignette.)

"$1000.          Montgomery Avenue Bond.          $1000.

"In Conformity

with an act passed by the people of the state of California represented in senate and assembly, entitled an act to open and establish a public street in the city and county of San Francisco, to be called Montgomery Avenue and to take private lands therefor. Approved April 1, 1872.

"The treasurer of the city and county of San Francisco, state of California, will pay at his office in said city and county to the holder hereof one thousand dollars in United States gold coin, with interest at the rate of six per cent. per annum, payable semi-annually in like gold coin upon surrender of the corresponding coupons and that the principal sum is redeemable within thirty years from the date of these presents. It being understood and agreed that this bond may be redeemed by said treasurer as provided in said above mentioned act of the legislature of the state of California. In witness whereof, the mayor, the tax-collector and city and county surveyor of said city and county of San Francisco, composing a board of public works have respectively signed these presents and the president of the board of public works

has signed the annexed coupons as of the first day of January, 1873.

"WILLIAM ALVORD,

"President of the board of public works and mayor of the city and county of San Francisco.

"ALEXANDER AUSTIN,

"Tax-collector and member of said board of public works.

"RICHARD H. STRETCH,

"City and county surveyor and member of said board of public works.

"M.A.B."

Annexed to each of the bonds was a series of coupons for semi-annual interest, reading (except as to number and dates) as follows:—

"($30.)                               Board of Public Works.

"(Coupon No. 60.)

"The treasurer of the city and county of

"San Francisco

"Will pay bearer at his office

"Montgomery Ave.    Thirty dollars              Due

"M.A.B.             on Bond No.        1st January, 1903.

"Bond.              13.

"WM. ALVORD,

"President of board of public works."

Some of the bonds were issued and delivered to the owners of lands taken for the avenue in payment for the damages sustained by them. Others were sold to the highest bidders pursuant to the terms of the act, and the proceeds of the sales were applied to the payment of the damages occasioned to the owners of the lands taken or damaged by the opening of the avenue and for other expenses of said opening. The proceeds of the bonds so issued paid and satisfied the entire cost of opening said avenue, and the board of works did open said Montgomery Avenue as a public street according to the requirements of the statute. On the twenty-first day of September, 1874, the said board of public works transferred the avenue so opened to the municipal authorities of the city and county of San Francisco for use as an open public street, and it has ever since been maintained and kept by said municipal authorities as a street of said city and county. Since the fiscal

CLIV Cal.—46

year 1880-81, the said city and county has never levied or assessed taxes on the lands described in the act as benefited by the improvement to pay the interest on said bonds, or to create a sinking fund for the redemption of said bonds. There is no money in the Montgomery Avenue fund for the purpose of paying either the interest due on said bonds or as a sinking fund to redeem the principal, and none of said bonds have in fact been redeemed or paid. The plaintiff purchased for value, and is the *bona fide* holder and owner of 855 of said Montgomery Avenue bonds and 37,367 coupons of thirty dollars each. The prayer of the complaint is that the plaintiff have judgment against the state of California for the amount due upon said bonds and coupons and further judgment for accruing interest upon said bonds until judgment.

By the terms of an act passed in 1893 (Stats. 1893, p. 57), the state has permitted the prosecution of suits against it by persons "having claims on contract or for negligence," and the plaintiff, claiming to have a cause of action for the breach of a contract made by the state, relies on this act. The contention of the defendant, adopted by the court below in sustaining the demurrer and entering judgment, was and is that these bonds and the act authorizing their issuance created no contractual liability on the part of the state of California. If any such liability was created, it must be found in the terms of the act and of the instruments issued under its authority. We have, therefore, in summarizing the complaint, omitted various averments of legal conclusions drawn by the plaintiff from the transactions above set forth. For example, it is alleged that the amounts due upon the bonds and coupons are justly, lawfully, and properly chargeable against and payable by the state of California to this plaintiff; that "the money paid for said bonds . . . was advanced to said state at its own request upon its written contract that it should be repaid"; that said "state sought and bargained for the money which it received and took in exchange for its said bonds, and it sold its said bonds as a purely commercial transaction." All of these are statements of conclusions which, if properly drawn, would follow as matter of law from the facts alleged and are not in themselves entitled to any weight in considering the sufficiency of the pleading as a declaration of facts importing a liability on the part of the defendant.

No payment of interest on these bonds (to say nothing of the principal) has been made for many years before the commencement of this action, and this is, of course, not the first time that litigation has arisen involving the act of 1872 and the obligations issued in consequence of the act. Before proceeding to an examination of the particular questions here presented, it may be well to briefly refer to former cases dealing with the act for the opening of Montgomery Avenue.

*Doyle* v. *Austin,* 47 Cal. 353, was an application for a writ of prohibition. The petitioners were the owners of a lot of land within the benefited district, as defined by the act, and they sought to prohibit the tax-collector of the city and county from collecting an assessment which had been levied against their land (and other property similarly situated) to meet the coupons which would fall due during the year 1874. The principal contention of the petitioners was that the act provided for a tax and was void because such tax was not levied in accordance with the requirements of the constitution of 1849, then in force. Judgment of dismissal was affirmed on appeal, this court holding that the act called for the levy of an "assessment," not a tax, and that the constitutional provisions relied on had no application.

*Mulligan* v. *Smith,* 59 Cal. 206, was an appeal from an order denying plaintiff's motion for a new trial. The action was ejectment, and plaintiff relied upon a deed from the tax-collector, made upon a sale of benefited land for non-payment of an assessment. The trial court found that the petition of property-owners, provided by the act to be filed with the mayor, had not in fact been signed by a majority of the owners in frontage as required by the statute. This finding was held to be sustained by the evidence, and this court concluded, as had the court below, that the filing of a petition signed by the requisite number of owners was a condition precedent, without which the board of works never acquired power to open the avenue or to perform any of the duties imposed upon them. The order denying a new trial was affirmed.

In *Liebman* v. *San Francisco,* 11 Sawy. 158, 24 Fed. 705, an action was brought in the United States circuit court by a bondholder against the city and county to recover the amount of twenty interest coupons. The defendant's motion to exclude all evidence in support of the complaint was granted. Sep-

arate opinions were delivered by Mr. Justice Field and Judge Sawyer, both agreeing that the bonds authorized by the act were not obligations upon which the city and county was in any way liable. This conclusion was based upon a reading of the entire statute, and particularly of section 24, above quoted. The view declared by this court in *Mulligan* v. *Smith,* —i. e., that no valid proceedings could be had in the absence of a petition signed by a majority in frontage of the property-owners—was expressly approved, and the opinion of Mr. Justice Field was, at least in part, based on the failure of the complaint to allege compliance with this condition.

These decisions in the state and federal courts—the one holding that under the facts shown a binding assessment could not be levied, and the other that in no event could the city be made liable on bonds issued—seem to have terminated all efforts to compel the payment of the bonds and coupons until, after the passage of the act permitting the state to be sued, this action was instituted. If the facts here alleged were in accordance with what was found by the trial court in *Mulligan* v. *Smith,* it would necessarily follow, from the law as there declared, that the board of works never acquired jurisdiction to issue any bonds, and that no liability was created by their issue. As is clearly shown in the Liebman case, the bonds contain no such recitals of the due performance of conditions precedent as could operate as an estoppel in favor of *bona fide* holders, to deny want of power to issue the instruments. But in this complaint it is specifically alleged that the actual owners of more than a majority in frontage of the benefited property *did* petition the mayor in writing for the opening of Montgomery Avenue. On demurrer this allegation must of course be taken as true. So that, while in previous cases the question was as to the rights of parties (whether bondholders or owners of land sought to be assessed) where it appeared that the statutory steps preliminary to the opening of the avenue, the issuance of bonds, and the levy of assessments had not been taken, we have here to decide the *status* of bonds issued after a full performance of all the acts upon which the right to issue said bonds depended. The bonds not having been paid, it is sought to compel their payment by the state, which, it is claimed, was a party to the contract created by their sale and purchase.

If we correctly understand the position of the appellant, it is not claimed that the state of California directly and in terms promised to pay the amounts evidenced by the bonds and coupons to the holders thereof.   Indeed, the provisions of the statute and of the bonds themselves preclude any such contention.   The state of California is not named on the face of the bonds as the obligor undertaking the performance of any obligation.   The bonds are issued by the board of public works, and are signed by the members of the board.   The only direct promise stated in them is that the treasurer of the city and county of San Francisco will pay a stated sum to the holder, and even this promise is not unconditional, but is qualified by the clause "in conformity with an act . . . entitled an act to open and establish a public street . . . to be called Montgomery Avenue . . ."   "Read in connection with what follows," says Mr. Justice Field, in speaking of this clause, "it imports that the treasurer will pay the amount designated in accordance with the act,—that is, out of the fund to be provided by it,—and that the holder can look to no other source of payment."   (*Liebman* v. *San Francisco*, 11 Sawy. 158, 24 Fed. 705.)   This view comports with the entire scheme of the act, which contemplates, not the creation of an indebtedness to be paid by funds raised by a general taxation of property in the city, or the state, but the creation of a special improvement district and the payment of the cost of the proposed improvement by means of assessments levied exclusively on lands within this district.   These lands, which in the contemplation of the legislature would be benefited by the opening of the avenue, were to be made to pay, to the extent of the benefit received, the expense incurred in such opening.   It was not anticipated by the framers of the law that any other source of payment would or could be resorted to.

The argument of appellant is, however, that the state, by authorizing the issue of bonds and providing that funds should be raised in a certain manner for their payment, entered into a contract with holders of the bonds that the method prescribed for raising such funds would be followed, and that it is liable for the damage occasioned to the holders by the failure of the proper officers, from whatever cause, to levy and collect the necessary assessments.   "We claim," as counsel

for appellant state the position in their brief, "that the state, through its agents, borrowed money from us under the form of a sale of negotiable bonds. That by reason of the negligence and fault of the state agents the money to pay the bonds as promised was not provided, and that therefore the state, as principal, is liable to the same extent as any private person would be." It has often been held, although the cases dealing with the subject are not all in accord, that where a city, to pay the cost of a local improvement, issues bonds payable only out of assessments to be levied and collected by the city from property-owners, and the right to collect the assessments is lost through the negligence of the city, action may be brought by the bondholders directly against the city for the amount of their loss. The rule has been applied even in cases of contracts or bonds providing specifically that the city should in no event be liable. (*Gable* v. *Altoona,* 200 Pa. St. 15, [49 Atl. 367]; *Dime Dep. & Dis. Bank* v. *Scranton,* 208 Pa. St. 383, [57 Atl. 770]; *Barber Asphalt P. Co.* v. *City of Harrisburg,* 64 Fed. 283, [12 C. C. A. 100]. See *Hitchcock* v. *Galveston,* 96 U. S. 341.) So far as this state is concerned, it must be taken to be settled that a provision in the contract that the city shall not be liable will prevent any recovery against such city if the assessments, for any reason, fail to discharge the cost of the work. (*McBean* v. *San Bernardino,* 96 Cal. 183, [31 Pac. 49]; *Conlin* v. *Board of Supervisors,* 99 Cal. 17, [37 Am. St. Rep. 17, 33 Pac. 753]; *Connolly* v. *San Francisco,* (Cal.) 33 Pac. 1109.) What would be the rule in the absence of such express provision is a question which has not been before this court. "The cases on the subject," says Judge Dillon (Municipal Corporations, sec. 482), "are conflicting," adding his own view as follows: "The right to a general judgment should, in our opinion, be limited, in any event, to cases where the corporation can afterwards reimburse itself by an assessment. For why should all be taxed for the failure of the council to do its duty in a case where the contractor has a plain remedy, by *mandamus,* to compel the council to make the necessary assessment and proceed in the collection thereof with the requisite diligence?" The query just suggested is decidedly apposite here. If, as alleged in the complaint, everything had been done which was requisite to vest in the authorities of the city and

county the right, and to impose upon them the duty, of levying and collecting assessments in order to discharge the principal and interest on these bonds, it is difficult to see why the bond-holders have not enforced compliance with this duty.   (*Himmelman* v. *Cofran,* 36 Cal. 411; *Town of Tipton* v. *Jones,* 77 Ind. 307; *Tone* v. *Mayor,* 70 N. Y. 157; *German Am. Bank* v. *Spokane,* 17 Wash. 315, [47 Pac. 1103, 49 Pac. 542]; *Whalen* v. *La Crosse,* 16 Wis. 288.)   Their failure to do so would, if this action can be sustained, result in transferring the burden from the owners of property in the benefited district, where the statute designed it to fall, to the general treasury, supplied by taxes upon all property-owners in the state.

But, whatever may be the true rule as to the liability of municipalities for the cost of improvements intended to be paid out of assessments on specific property, it is clear that such liability cannot exist unless the contract under which work was done or money advanced was the contract of the municipality sought to be charged.   So here, where there has been a failure to pay the bonds in the manner contemplated, there can be no obligation on the part of the state unless the issuance of the bonds constituted a contract to which the state was a party.   It is at this point that the argument of the appellant fails.   As has been pointed out, there is nothing on the face of the bonds purporting to make the state an obligor, and the statute makes it clear that the legislature never contemplated that payment was to be made in any manner other than by assessments on the benefited property.   Section 24 was inserted in order to guard against any possible implication that there might be liability on the part of the city, which was to receive the benefit of the improvements when completed. It would seem that this was the only liability considered to be possible.   That no similar provision specifically exempting the state was declared, does not appear to us to indicate any more than that the creation of liability on the part of the state was not within the scope of the legislative consideration.   Section 24 was intended to make clear the purpose of limiting the means of payment to the proceeds of assessments, not to impose a liability on the state, or to shift one from the city to the state.

Much importance is attached by appellant to the opinion of Judge Sawyer in *Liebman* v. *San Francisco,* and particularly

to that portion of it in which he says, in construing the statute, that "the state has undertaken to do this work through the instrumentalities chosen by itself." Similarly, in the same case, Mr. Justice Field says that the board of works "is made the agent of the state to carry out a public improvement directed by its statute, and not the agent of the city and county." But, conceding that the board of works and the other officers mentioned in the act became the agents of the state, it by no means follows that the state authorized them to bind it to pay the cost of the work, or to make the state liable for their failure to raise, in the manner provided by the statute, the funds necessary for the payment of the bonds. That the state, when making a contract with an individual, is liable (though not suable without its consent) for a breach of its agreement in like manner as an individual contractor, is not to be disputed. (*People* v. *Stephens,* 71 N. Y. 549; *Carr* v. *State,* 127 Ind. 204, [22 Am. St. Rep. 624, 26 N. E. 778]; *Chapman* v. *State,* 104 Cal. 690, [43 Am. St. Rep. 158, 38 Pac. 457].) In the Chapman case the state was held liable for the value of coal which it had received for storage on one of its wharves. Through the negligence of the state's agents and officers the wharf broke and the coal was lost. The decision went on the ground that the state, in undertaking the business of a wharfinger for hire, and making a contract as such, agreed to be bound "to the same extent as a private person engaged in conducting the business of a wharfinger would be under a similar contract." The court recognizes, however, that liability in such cases must rest upon the making of a contract by the state, and that "in the absence of a statute voluntarily assuming such liability, the state is not liable in damages for the negligent acts of its officers while engaged in discharging ordinary official duties pertaining to the administration of the government of the state." (*Gibbons* v. *United States,* 8 Wall. 269; *Lewis* v. *State,* 96 N. Y. 74, [48 Am. Rep. 607]; *Clodfelter* v. *State,* 86 N. C. 51, [41 Am. Rep. 440].) No liability for the failure of the proper officers to levy and collect the assessments necessary to discharge the Montgomery Avenue bonds can be imposed upon the state if those officers, while agents of the state, were merely agents charged with governmental functions. In other words, there is no liability if the state, in authorizing the doing of the things contemplated

by this statute, was acting in its sovereign capacity. Whether it was so acting is a question depending upon the construction of the act itself. The opening of streets and the condemnation of the necessary lands, together with provision for payment of the costs and expenses, are among the most familiar governmental powers. Officers charged with duties in connection with such undertakings are exercising, on behalf of the state, governmental functions in as true a sense as are the ordinary executive and judicial officers. In passing legislation providing that a street may be opened, the state's position is in no degree analogous to that assumed by it when it offers wharves or warehouses to the public, to be used for hire. All public corporations exercising governmental functions within a limited portion of the state—counties, cities, towns, reclamation districts, irrigation districts—are agencies of the state just as the board of works created by this act is such agency. Each of the corporations named is given power to order public work to be done and to provide for its payment, yet it has never been supposed that, merely because such authority is conferred by the legislature, the state makes itself liable for the failure of such corporations to comply with their contracts. The act here in question authorizes the making of contracts, but while power to make them is derived from the state, it is not provided, expressly or by implication, that they shall be made in the name or on behalf of the state. It is not necessary to resort to the well-settled rule that general words in a statute are not to be construed as imposing a liability on the state (*Molineux* v. *State,* 109 Cal. 378, [50 Am. St. Rep. 49, 42 Pac. 34]; *Savings and Loan Soc.* v. *San Francisco,* 131 Cal. 356, [63 Pac. 665]; *San Francisco L. & C. Co.* v. *State,* 141 Cal. 354, [74 Pac. 1047]), for we do not find in this statute any language evidencing an intent to make the state a party to the contract created by the issuance and sale of the bonds. That contract was the limited one expressed on the face of the instruments. The failure to perform it was, on the facts here alleged, the default of officers in the administration of governmental functions, and in the absence of a legislative provision binding the state to respond for such default, the injured parties were bound to seek their remedy by compelling the delinquent officials to perform their duty.

The judgment is affirmed.

Angellotti, J., Shaw, J., Lorigan, J., Henshaw, J., and Melvin, J., concurred.

Rehearing denied.