[No. A036501. First Dist., Div. Five. Dec. 3, 1987.]

FIRST INTERSTATE BANK OF CALIFORNIA, as Trustee, etc., Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

**COUNSEL**

Robert L. Lofts, Kathleen Piraino, Mark C. Jensen and Severson, Werson, Berke & Melchior for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, and Mary C. Michel, Deputy Attorney General, for Defendants and Respondents.

**OPINION**

**HANING, J.**—Plaintiff/appellant First Interstate Bank appeals a judgment in favor of defendants/respondents State of California and the Board of

Governors of the California Community Colleges (Board) after the trial court sustained without leave to amend respondents' demurrer to appellant's complaint grounded in, inter alia, breach of contract and negligence. Appellant contends the trial court erred in its basic conclusion that respondents are not liable as a matter of law for the acts of a particular community college district.

■ The rules governing our review of a judgment sustaining a demurrer are long-settled and require no elaboration. Basically, the allegations in the complaint are regarded as true and are liberally construed, the plaintiff is assumed to be able to prove all facts as alleged, and while a demurrer admits all material facts properly pleaded, it does not admit contentions, deductions, or conclusions of law. (*Dale* v. *City of Mountain View* (1976) 55 Cal.App.3d 101, 105 [127 Cal.Rptr. 520].) A complaint will withstand a general demurrer if, liberally construed, it states a cause of action on any theory. "The ruling on a general demurrer is thus a method of deciding the cause of the merits on assumed facts (those alleged) without a trial. [Citations.]" (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 902.) Our statement of facts comes from the complaint and its attached exhibits, and those matters which may be judicially noticed.

On November 1, 1982, the Lassen Community College District (District) entered into a lease-purchase agreement with Bankers Leasing and Financial Corporation (Bankers). Pursuant thereto, the District leased a five acre site to Bankers on which Bankers agreed to construct a cogeneration and training facility (the project). The District in turn agreed to lease the project from Bankers, with an option to purchase it. The agreement obligated the District to make semi-annual lease payments beginning October 15, 1984.

Pursuant to the lease-purchase agreement, Bankers entered into development and construction contracts. It assigned all its rights under these contracts to the District which, as agent for Bankers under the lease-purchase agreement, began construction.

To finance the project Bankers arranged for issuance and sale to the public of $7,150,000 worth of certificates of participation in the lease payments to be made by the District to Bankers under the lease-purchase agreement. Appellant, the District and Bankers entered into a trust agreement whereby the net proceeds of the certificate sales were deposited with appellant as trustee, and appellant agreed to disburse monies for construction, accept the lease payments from the District pursuant to the lease-purchase agreement, and make disbursements to the certificate owners.

Bankers assigned its rights under the lease-purchase agreement to appellant for the benefit of the certificate owners. The District failed to make the required payments due October 15, 1984, and April 15, 1985, and this action followed.

Specific to its cause of action for negligence appellant alleges that as designed, planned and operated by the District the project could never have generated sufficient funds to cover its operating expenses, and as constructed by the District it could not function safely. As a result, it contends, the District has been unable to make lease payments from the project's operating profits to the foreseeable detriment of the certificate holders and appellant as trustee. It contends the Board breached its duties under Education Code sections 71028 and 81800 et seq.,[1] by approving the District's plans for the project and by failing to properly supervise the District in the construction of the project and in complying with its obligations under the agreements.

Specific to its cause of action for breach of contract appellant alleges that respondents owe $660,405 plus interest under the lease-purchase agreement for unpaid rental payments, that the District and respondents received insurance proceeds of approximately $2 million, which constitute trust funds under the trust agreement, and that respondents have a duty under the agreements to pay those funds to appellant as trustee for the certificate owners.

I

Appellant first contends that the construction and maintenance of school buildings is a sovereign and nondelegable duty of the State and the Board, and that the District was acting merely in an agency capacity on the project. Community colleges are part of the public school system provided by the state Constitution. (Cal. Const., art. IX, §§ 6, 14.) The Constitution requires the Legislature to provide for boards of education in each county. (Cal. Const., art. IX, § 7.) Pursuant to this mandate, the Legislature has authorized the creation of community college districts, to be managed and

---

[1] Education Code section 71028 states, in pertinent part, that the Board "shall review and approve . . . master plans for facilities for each community college district."

Education Code section 81820 requires each community college district to submit to the chancellor of the state community colleges by February 1, 1981, a five year capital construction plan for community college purposes. Section 81830 provides that a district "may submit a proposed project to the chancellor for review and approval or disapproval. The proposed project shall be an element of the district's plan for capital construction." Section 81836, subdivisions (b) and (c) require the chancellor to establish standards for community college facilities and review all construction plans submitted to him.

controlled by a governing board elected by the residents of the district. (Ed. Code, §§ 72010, 72020 et seq., 74000 et seq.) The community college districts may sue and be sued, hold and convey property, construct facilities, exercise the power of eminent domain, enter into contracts, appoint legal counsel, and accept gifts. (Ed. Code, §§ 72201, 72287, 72300, 72419; *Ward* v. *San Diego School Dist.* (1928) 203 Cal. 712, 715 [265 P. 821]; *Butler* v. *Compton Junior College Dist.* (1947) 77 Cal.App.2d 719, 728 [176 P.2d 417]; *Kelso* v. *Board of Education* (1941) 42 Cal.App.2d 415, 420 [109 P.2d 29].) District boards are also liable for all debts and contracts made in the name of the district and must insure against certain liabilities. (Ed. Code, §§ 72500, 72506.) The district board determines the district's budget, which is presented to the county for establishing district tax rates, and it determines the need for bond tax levy override elections. (Ed. Code, § 72286.) For purposes of the Tort Claims Act (Gov. Code, § 900 et seq.), the district is a "local public entity." (Gov. Code, § 905; *Loehr* v. *Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1078 [195 Cal.Rptr. 576].) Neither the state Constitution nor any statute provides that a district's actions are undertaken on behalf of the state.

Respondent Board is established by Education Code section 71000. Its primary purpose is to "provide leadership and direction in the continuing development of community colleges . . . . [Its work] shall at all times be directed to maintaining and continuing, to the maximum degree permissible, local autonomy and control in the administration of the community colleges." (Ed. Code, § 71023.) It is empowered to set minimum standards entitling districts to receive state aid (Ed. Code, § 71025), establish minimum academic and employment standards (Ed. Code, §§ 71066, 71068), represent community colleges before state and federal boards (Ed. Code, § 71071), administer state and federal support programs (Ed. Code, § 71072), and establish a uniform system of budgeting and accounting for the districts (Ed. Code, § 71073), and generally coordinate and oversee the various districts.

Because education is a matter of statewide concern (Cal. Const., art. IX, § 1), school districts are considered agencies of the state for the local operation of the state school system. (*Hall* v. *City of Taft* (1956) 47 Cal.2d 177, 181 [302 P.2d 574]; *Gonzalez* v. *State of California* (1972) 29 Cal.App.3d 585, 590 [105 Cal.Rptr. 804].) However, the fact that a state agency is created by statute to discharge a duty constitutionally imposed on the state does not transmute the agency into "the state," nor render the state liable for its acts under a general theory of respondeat superior. (*Union Trust Co.* v. *State of California* (1908) 154 Cal. 716, 728-729 [99 P. 183]; *Gonzalez* v. *State of California, supra,* at p. 590 [105 Cal.Rptr. 804].) The

authority of an agency like a school district to act is measured by the authority statutorily conferred upon its governing board. An agency may not act on behalf of the state, nor may the state perform a task delegated to the agency, unless statutorily authorized to do so. (*Id.*, at p. 591.)

 Government liability is confined to "rigidly delineated circumstances." (*Williams* v. *Horvath* (1976) 16 Cal.3d 834, 838 [129 Cal.Rptr. 453, 548 P.2d 1125].) Unless the state and the local agency have entered into a joint powers agreement, no liability is created in the state for the acts or omissions of the agency. (Gov. Code, §§ 895-895.8.) In *Gonzales* v. *State of California, supra,* for example, the plaintiff was injured when struck by a school district bus. He alleged the state was liable for his injuries because the bus driver was a state employee by virtue of the constitutionally imposed nondelegable duty of the state to educate children, which includes pupil transportation. The court first noted the absence of any statute authorizing the state to employ district bus drivers. It then noted the various statutes authorizing local school districts to hire, establish compensation for, supervise, and discharge bus drivers. It concluded therefrom that the driver was a district employee. Because liability is fixed on the public entity whose employee causes the injury (Gov. Code, § 815.2), the state was not held liable.

Appellant has cited no statute authorizing the Lassen Community College District to enter into trust agreements on behalf of either respondent. It does not allege liability under a joint powers agreement. As previously noted, the District is specifically authorized to contract in its own name and is liable for its own obligations. Neither the State of California nor the Board is a party to any agreement in the instant case, nor do any of the relevant agreements or documents directly or indirectly indicate a basis for respondents' liability thereunder. There is no evidence that the District was authorized to represent or act on behalf of the State or the Board, nor that it purported to do so. Appellant has not alleged any conduct or acts by respondents, independent of the District's actions, which would render them liable as principals for the District's contractual obligations at issue herein.

## II

Appellant next contends respondents are liable under implied contracts resulting from their receipt of money and the use of the project and project site, and for inverse condemnation of the project and project site. Appellant contends the $2 million the District received in insurance proceeds constitutes trust funds under the trust agreement, which in turn

constitutes money and/or value had and received by respondents for the use and benefit of appellant as trustee for the certificate owners. It also contends respondents are obligated to appellant in the amount of $660,405, the unpaid lease payments, which also constitutes money and/or value had and received by respondents for appellant's benefit.

The essential elements of an action for money and/or goods had and received are (1) a statement of indebtedness of a certain sum, (2) the consideration made by the plaintiff, and (3) nonpayment of the debt. (4 Witkin, Cal. Procedure (3d ed. 1985) pleading, § 508.) However, "no recovery for money had and received can be had against a defendant who never received any part of the money or equivalent thing sued for. [Citation.]" (*Rains* v. *Arnett* (1961) 189 Cal.App.2d 337, 344 [11 Cal.Rptr. 299].) Five days after appellant filed the instant complaint, the District filed a chapter 9 petition in the United States Bankruptcy Court. One week later appellant sought an order from the bankruptcy court compelling the District to deposit the $2 million it was about to receive in insurance proceeds from a settling contractor into a separate account, with no disbursement made until the bankruptcy proceeding was final. The bankruptcy court granted the order. Respondents do not have access to the insurance proceeds because all assets of a debtor fall into the exclusive jurisdiction of the bankruptcy court after the debtor has filed a petition in bankruptcy. (11 U.S.C. § 541; 28 U.S.C. § 1334(d).) Moreover, in both the bankruptcy proceeding and in the instant complaint, appellant represented that it was *the District* who had or was about to be paid the insurance proceeds pursuant to claims *the District* had settled. Respondents are not shown to have any interest therein.

Respondents are also not shown to have any interest in the unpaid lease payments. The agreements provide for appellant to apply the proceeds from the sale of the certificates to construction costs and then disburse to certificate owners their proportionate share of the lease payments which the District is required to make to appellant as trustee. Consequently, respondents have never had any right, claim or interest in or to the lease payments.

Appellant contends for the first time on appeal that the complaint states a cause of action for inverse condemnation. A party may change its legal theory of recovery on appeal if the change presents only a question of law on the facts in the record. (*Ward* v. *Taggart* (1959) 51 Cal.2d 736, 741-742 [336 P.2d 534].) A property owner may bring an action for inverse condemnation if his real or personal property has been taken or damaged for public use without just compensation. (Cal. Const., art. I, § 19; *Sutfin* v. *State of California* (1968) 261 Cal.App.2d 50, 53 [67

Cal.Rptr. 665].) The complaint must allege plaintiff's ownership and a description of the property, the defendant condemnor's taking or damaging, and the nature of the injury and substantial damage to the property right. (5 Witkin, Cal. Procedure, *op. cit. supra,* Pleading, § 641.) ■ Here, appellant contends the facts alleged in its complaint demonstrate that it owns a leasehold interest in the project site and the proceeds of those interests, including the $2 million insurance proceeds, and that respondents, through the District, damaged such property rights "by the sovereign public activities of planning, building and operating the Project on the Project Site, and by allowing [the District] to use the [$2 million] fund in lieu of funds ordinarily supplied by the State." However, appellant's conclusions are unsupported by any factual allegations demonstrating liability on the part of respondents.

## III

■ Appellant contends respondents were negligent because they breached their mandatory statutory duties, specifically Education Code section 81836, subdivisions (c) and (e), which require the state community college chancellor to establish standards for community college facilities and "[r]eview plans and specifications for all construction in those community college districts that have submitted plans and specifications therefor to the chancellor for approval," and either to approve the plans or return without approval and with recommendation for change any plans not conforming to established standards. Appellant alleged that respondent Board breached this duty by approving a project which could never have generated sufficient funds to cover the project's operating expenses, and by failing to properly supervise the District.

"Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." (Gov. Code, § 815.6.) ■ In order to establish liability under this section, the duty must be mandatory, not discretionary, the enactment must be intended to protect against the kind of risk of injury the plaintiff suffered, and breach of the duty must be the proximate cause of the injury suffered. (*Posey* v. *State of California* (1986) 180 Cal.App.3d 836, 848 [225 Cal.Rptr. 830], and citations therein.) ■ Education Code section 81836 obligates the chancellor only to determine if submitted plans conform to established standards. It does not require him to determine whether the plans are cost-effective for their intended purpose, nor does it require him to oversee

construction of a particular project or that a district is meeting its contractual obligations in connection therewith. The statute is clearly not intended to protect against a district's default on a financing agreement.

## IV

Finally, appellant contends respondents are estopped from asserting as a defense any failure by appellant to comply with the Tort Claims Act. As we have already resolved, respondents have not been shown to be liable under the facts and theories alleged. Consequently, any issue concerning the claim filing requirements of the Tort Claims Act is irrelevant.

Affirmed.

Low, P. J., and King, J., concurred.