Opinion
 

 SILLS, P. J.
 

 The County of Orange sued the Serrano Irrigation District and a sand and gravel company, FST Sand & Gravel, Inc. (Frank Smith Trucking), for removing sand and gravel from county land. Frank Smith Trucking was insured by Citation General Insurance Company, which became insolvent. The California Insurance Guarantee Association (CIGA), took over Frank Smith Trucking’s defense, and filed a summary judgment motion against the county on the theory that CIGA was not statutorily required to pay any obligation to the county. The trial court granted the motion, and this appeal followed in the wake of the ensuing judgment.
 

 
 *355
 
 CIGA’s job is to pay “covered claims” arising out of the obligations of an insolvent insurer (Ins. Code, § 1063.2, subd. (a)),
 
 [1]
 
 but its liability cannot exceed the amount of covered claims. (Ins. Code, § 1063.12, subd. (a);
 
 Isaacson
 
 v.
 
 California Ins. Guarantee Assn.
 
 (1988) 44 Cal.3d 775, 786 [244 Cal.Rptr. 655, 750 P.2d 297].) (1) In bringing its summary judgment motion, CIGA successfully argued that subdivision (c)(3) of section 1063.1 (now subd. (c)(4)) excluded from the definition of “covered claim” any obligation to the
 
 county
 
 because of the county’s status as a local government entity created by the state.
 
 [2]
 

 The key language from section 1063.1, former subdivision (c)(3) (now subdivision (c)(4)) is: “ ‘Covered claims’ shall not include . . . any obligations to any state or to the federal government.”
 
 [3]
 
 CIGA contends that the Legislature intended, in order to ration CIGA’s limited resources, to exclude all
 
 government
 
 entities from making claims upon it, because their need is “manifestly less urgent” than that of private sector claimants.
 

 
 *356
 
 We recognize the Legislature has insulated CIGA from whole categories of claims and claimants, including obligations arising out of life and health insurance, reinsurance agreements, or obligations to other insurers. (§ 1063.1, subd. (c)(3)-(5).
 
 [4]
 
 ) Ultimately, however, CIGA’s argument is not persuasive for three reasons:
 

 —(1) it rests on an ungrammatical reading of the critical text;
 

 —(2) the clear implication from the way the word “state” is used in the Insurance Code is that the Legislature did not intend the word to necessarily include local government bodies;
 

 —(3) while excluding all governmental entities from any claims may (or may not) be good policy,
 
 [5]
 
 differentiating between local government entities and any state or the federal government is hardly so irrational that it constitutes an absurd result so as to force us to ignore reasons (1) and (2).
 

 Including Local Government Entities in Section 1063.1, Subdivision (c)(4) Is
 

 Ungrammatical
 

 First, CIGA’s reading is contrary to accepted rules of parallel construction in English grammar. That is, CIGA’s reading forces the word “federal” into the role of noun rather than adjective.
 

 Throughout its brief, CIGA reads the statutory phrase “any obligations to any state or to the federal government” this way: “any state . . . government.” In doing so, CIGA ignores two key words: “to” and “the.” If one were to diagram the sentence, one would see that the words “to any state” and “to the federal government” are both parallel modifications of the words “any obligations.” But the second “to” (as in “to any state or
 
 to
 
 the federal government”) shows the independence of the two clauses, so “state” can stand on its own as a noun. The sentence makes perfect sense if one stops at “to any state.” By contrast, any attempt to read “state” as modifying “government” is thwarted by the conspicuous
 
 the
 
 in front of “federal government.” No one would say: “to any state or the federal” and end the sentence there.
 

 There are several ways the Legislature might have phrased the statute if it had wanted to convey the idea that it should apply to “any state government.” The Legislature could have written, very simply: “to any state or federal government.”
 

 
 *357
 
 Or, more explicitly, it might have said: “to any level of state or federal government.”
 

 Or even: “to any governmental body, local, state or federal.”
 

 But it did not, even though, as we are about to see, there are numerous places elsewhere in the Insurance Code where the Legislature felt compelled to elaborate on the various levels and forms of government which exist by virtue of state law. What the Legislature wrote was: “to any state or
 
 to the
 
 federal government.” (§ 1063.1, subd. (c)(4), italics added.) The logical and natural reading of the statute, then, is that covered claims do not include obligations to “any state.” Period.
 

 The Legislature Does Not Use the Word “State” in the Insurance Code to Include Local Governmental Bodies
 

 The definition of “state” is found in section 28, which reads, in its entirety, as follows: “ ‘State’ means the State of California, unless applied to the different parts of the United States. In the latter case, it includes the District of Columbia, the commonwealths and the territories.” “County” is separately defined in section 14. (The complete text of section 14 is: “ ‘County’ includes ‘city and county.’ ”)
 

 While the definition of “state” is almost the same one as found in the Government Code (see Gov. Code, § 18),
 
 [6]
 
 it is significant that there are a variety of places and contexts in the Insurance Code where the state government of California is differentiated from local government entities. The California Risk Retention Act of 1991, for example, addresses the liability of nonprofit associations. In discussing potential liability of nonprofit associations, section 130, subdivision (e)(1)(B) defines liability to include legal liability to third parties arising out of any activity “of any state or local government, or any agency or political subdivision thereof.”
 

 Section 685 addresses the possibility of retaliatory taxes on California insurers “pursuant to the laws of any other state.” The final sentence of the statute
 
 explicitly
 
 deems a tax imposed by a local government body of another state as imposed by that
 
 state-.
 
 “Any tax, license or other fee or other obligation imposed by any city, county, or other political subdivision or agency of the other state or country on California insurers or their agents or representatives shall be deemed to be imposed by that state or country within the meaning of this article.”
 

 
 *358
 
 In discussing what certain associations can do in administering insurance policies for health care for people who are 65 years old or older pursuant to a “federal or state program,” section 795.25 allows such an association to “perform administrative services in connection with any such program under contract with the federal government, the state, any agency of either, or any other entity.”
 

 In addressing the withdrawal of insurers from doing business in the state, section 1077.3 allows the commissioner to disclose certain records to “a department, agency, or instrumentality of this or another state.”
 

 Section 1192.9 permits an insurer to make excess fund investments in “open-end diversified management investment” companies if, among other things, those companies confine their assets to certain categories, one of which is “debt obligations issued by . . . states or their political subdivisions, agencies, and instrumentalities . . . .” Two other statutes on the topic of excess fund investments, section 1192.95, subdivision (a)(6) and section 1194.5, also distinguish between “debt obligations issued by . . . states” and local governments. Section 1192.95, subdivision (a)(6) uses the phrase “debt obligations issued by . . . states or their political subdivisions, agencies, and instrumentalities . . .” while section 1194.5 refers to “any debt obligation issued by . . . any state, its agencies or political subdivisions, or by any city, county, or city and county, or by any department or board of such city, county, or city and county . . . .”
 

 Section 4014 deals with eligibility to be a policyholder of a mutual insurer, i.e., the sort of entities which might make claims upon such an insurer. This statute also differentiates the state government from local government bodies: “Any person, government or governmental agency, state or political subdivision thereof, public or private corporation, board, association, estate, trustee or fiduciary may be a policyholder member of a mutual insurer.”
 

 And the words “any state” are explicitly differentiated from local government authorities in section 10089.47, dealing with bonds issued by the California Earthquake Authority. Such bonds “may legally be deposited with, and received by, any state or municipal officer or agency or political subdivision of the state . . . .”
 

 Another context in which local governments are distinguished from the state for purposes of who may buy a particular kind of insurance policy is section 10270.5, which explicitly defines group disability insurance to be a policy issued to a variety of entities, including “the federal or state government, or to any federal or state agency, political subdivision or district, or to
 
 *359
 
 any public, governmental, or municipal corporation, or to any unit, agency or department thereof . . . .”
 

 Finally, a statute which authorizes public entities to obtain workers’ compensation insurance through the State Compensation Insurance Fund, section 11870 is very clear that “[t]he state” is not synonymous with local government: “The state, any agency, department, division, commission, board, bureau, officer or other authority thereof, and each county, city and county, city, school district, irrigation district, any other district established by law, or other public corporation or quasi public corporation within the state, including any public utility operated by a private corporation may insure against its liability for compensation with the State Compensation Insurance Fund.”
 

 It is true that none of these statutes deal directly with CIGA, and therefore, strictly speaking, the doctrine of construing statutes in pari materia does not apply. But it is also inescapably clear that in the Insurance Code the Legislature certainly does not consider the word “state” as shorthand for “state, political subdivision or district” or some variation on that theme. Time and again the Legislature felt the need to add such extra words, and in contexts—liability, claims, authorization to obtain insurance, even the use of the phrase “any state”—similar to that of section 1063.1, subdivision (c)(4). There is no reason for the Legislature to have suddenly and without indication switched its practice in section 1063.1, subdivision (c)(4).
 

 While CIGA offers a
 
 reason
 
 the Legislature
 
 might
 
 want to restrict covered claims to all levels of government (i.e, to save its limited resources),
 
 [7]
 
 it offers no
 
 explanation
 
 as to why the Legislature should suddenly discontinue its practice of assuming that local governmental bodies are not necessarily subsumed in the word
 
 state.
 
 If, for example, the Legislature had really wanted to adopt a policy that CIGA had no obligation to pay any entity even remotely resembling a government it could have recited the litany set out in section 11870, or at the very least, used a phrase like “no government entity.”
 

 Thus while the doctrine of construing statutes in pari materia may not apply, the venerable rule of construction
 
 expressio unius est exclusio alterius
 
 does. Having distinguished between the State of California and various local agencies and bodies numerous times in the Insurance Code, the Legislature certainly could have added words to that effect when it wrote “any state or to
 
 *360
 
 the federal government.” The omission of those entities in section 1063.1, subdivision (c)(4) is conspicuous and naturally leads to the conclusion that the Legislature wanted to give local bodies the benefit of being able to make claims against CIGA.
 

 CIGA’s counterargument to the doctrine of
 
 expressio unius
 
 is that the doctrine is inapplicable when its operation contradicts a “discernible and contrary legislative intent.” (E.g.,
 
 Wildlife Alive
 
 v.
 
 Chickering
 
 (1976) 18 Cal.3d 190, 195 [132 Cal.Rptr. 377, 553 P.2d 537].) The argument fails because there
 
 is
 
 no “discernible and contrary” legislative intent. CIGA has mentioned nothing in the legislative history of section 1063.1, subdivision (c)(4) which shows a clear intent on the part of the Legislature to insulate it from the claims of local governments, and what intent may be discerned from the actual text of the statute indicates that the Legislature deliberately did not include local governments within the statute’s ambit. CIGA’s proffered interpretation renders surplusage all the references in the Insurance Code to various public entities in addition to “the state.”
 

 Distinguishing Between the State of California and Local Government Is Rational in the Context of Claims Against CIGA
 

 The acid test of statutory interpretation based on principles of statutory construction is always whether the interpretation yields an absurd result. Here, CIGA argues that it is absurd that the statute should be read to differentiate between “certain forms of state or federal government, but not others.”
 

 While it might be true that it would have made perfect sense for the Legislature to limit CIGA’s coverage to claims arising from entities other than the state or federal government, it can hardly be said that differentiating between the state (or
 
 the
 
 federal government) on the one hand, and other public entities on the other, is absurd. Different public entities have their own liabilities, and the State of California is normally
 
 not
 
 liable for the debts of separate public entities, even when those entities are created pursuant to state law.
 

 As noted in
 
 First Interstate Bank
 
 v.
 
 State of California
 
 (1987) 197 Cal.App.3d 627, 633 [243 Cal.Rptr. 8], the fact that some governmental body is created by state law does not “transmute” it into “ ‘the state’ ” itself. The authority of any given government agency is measured by the authority statutorily conferred upon it. (See
 
 id.
 
 at pp. 633-634.) Most importantly, unless there is a joint powers agreement, “no liability is created in the state for the acts or omissions of the [local] agency.”
 
 (Id.
 
 at p. 634.)
 

 
 *361
 
 For purposes of tort claims, the Legislature differentiates local public entities from the state. Government Code section 900.4 states, “ ‘Local public entity’ includes a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State,
 
 but does not include the State.”
 
 (Italics added.) The Government Code requires claimants against local public entities to run their own gauntlet of requirements (see Gov. Code, § 905), exempting, interestingly enough, claims by the state itself against such an entity. (See Gov. Code, § 905, subd.
 

 (i).)
 

 Because local governments are not the “state” for purposes of
 
 tort liability,
 
 it would make sense for the Legislature to “give them a break” and allow them to press claims against CIGA while prohibiting entities in whom sovereignty resides—the state itself, and
 
 the
 
 federal government—from making such claims. The statute thus boils down to the Legislature’s decision as to who should bear a loss as between local governments and CIGA. And as between forcing a loss on CIGA or on the taxpayers, it is hardly absurd to prefer the taxpayers over CIGA.
 

 Because the present case does not deal with workers’ compensation benefits, we are spared the need to deal with two cases,
 
 Burrow
 
 v.
 
 Pike
 
 (1987) 190 Cal.App.3d 384 [235 Cal.Rptr. 408] and
 
 California Ins. Guarantee Assn.
 
 v.
 
 Argonaut Ins. Co.
 
 (1991) 227 Cal.App.3d 624 [278 Cal.Rptr. 23], which conflict with each other on that issue.
 

 Disposition
 

 The judgment is reversed. Appellant is to recover its costs on appeal.
 

 Wallin, L, and Crosby, J., concurred.
 

 [1]
 

 All statutory references in this opinion are to the Insurance Code unless otherwise specifically designated.
 

 [2]
 

 There was an unstated premise behind the motion that is counterintuitive, to say the very least. The trial judge appears to have granted summary judgment in favor of a party just because the party’s
 
 insurer
 
 had become insolvent and the claim against the party was
 
 not
 
 a covered claim under the statute governing CIGA. As one might expect, claims outside of the original scope of an insolvent insurer’s coverage are not statutorily covered claims. (See § 1063.1. subd. (c)(l)(i) (covered claim means obligation of insolvent insurer “within the coverage of an insurance policy of the insolvent insurer”).) But this prospect raises a potential anomaly in granting summary judgment to a party just because the litigation does not involve a covered claim against CIGA. Perhaps we are missing something—the issue has, after all, not been briefed—but if someone with a
 
 solvent
 
 insurer is sued and loses, he or she must pay any part of the judgment which is not covered by the policy, and may even be required to reimburse the insurer for defense costs that “are not even potentially covered.” (See generally,
 
 Buss
 
 v.
 
 Superior Court
 
 (1997) 16 Cal.4th 35, 50 [65 Cal.Rptr.2d 366, 939 P.2d 766].) Why should someone with an insolvent insurer get a better deal and not be required to pay anything—even if not otherwise covered by the original insurance policy—because CIGA is statutorily precluded from paying any part of the third party’s judgment? Because we reverse on the ground that CIGA is not necessarily precluded from paying the county’s claim under section 1063.1, subdivision (c)(4), we need not address this precise question or how it might relate to the precise facts of the case before us. However, nothing in this opinion is meant to endorse the highly novel proposition of law that appears to have served as an unarticulated predicate for the trial court’s decision.
 

 [3]
 

 Here is the entire text of section 1063.1, subdivision (c)(4) as it reads after the 1997 amendments: “ ‘Covered claims’ does not include any obligations of the insolvent insurer arising out of any reinsurance contracts, nor any obligations incurred after the expiration date of the insurance policy or after the insurance policy has been replaced by the insured or canceled at the insured’s request, or after the insurance policy has been canceled by the association as provided in this chapter, or after the insurance policy has been canceled by the liquidator, nor any obligations to any state or to the federal government.” (See Stats. 1997, ch. 497, § 2.5.) The only change to the statute in 1997 was to replace the word “shall” with “does” in the first sentence.
 

 [4]
 

 Formerly subdivision (c)(2)-(4).
 

 [5]
 

 It is, however, a tautology to conclude, as CIGA urges us to, that because the Legislature intended CIGA to be a “last resort” local government bodies are excluded from making claims against it. Obviously CIGA would have no reason to exist unless it paid
 
 some
 
 claims, and so the idea of last resort does not answer the question:
 
 last resort for whom?
 

 [6]
 

 The Insurance Code definition includes “commonwealths,” which are not mentioned in section 18 of the Government Code.
 

 [7]
 

 Though CIGA never quite says it, implicit in its argument is that either the taxpayers or the legitimate creditors of government should pick up losses otherwise borne by CIGA and, indirectly through CIGA, consumers of insurance.